# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: October 28, 2026

| | |
|---|---|
| STEVEN JAHN, Petitioner, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent. | PUBLISHED<br>No. 21-1846V<br>Special Master Nora Beth Dorsey<br>Motion for Relief from Judgment; Vaccine Rule 36; Rules of the Court of Federal Claims ("RCFC") 60(b). |

Renée Gentry, Vaccine Injury Clinic, GWU Law School, Washington, DC, for Petitioner.
Catherine Stolar, U.S. Department of Justice, Washington, DC, for Respondent.

## ORDER DENYING PETITIONER'S MOTION FOR RELIEF FROM JUDGMENT[1]

On September 13, 2021, Steven Jahn ("Petitioner") filed a pro se petition for compensation in the National Vaccine Injury Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2018),[2] alleging he suffered transverse myelitis ("TM") as a result of an influenza ("flu") vaccination on September 11, 2018. Petition at Preamble (ECF No. 1). On November 7, 2022, the undersigned issued a Decision dismissing the case. Decision dated Nov. 7, 2022 (ECF No. 20) ("Dismissal Decision"). Judgment entered dismissing the petition on December 9, 2022. Judgment dated Dec. 9, 2022 (ECF No. 22).

[1] Because this Order contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Order will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018). All citations in this Order to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Petitioner subsequently filed motions seeking relief from that judgment and requesting to reopen his claim on August 4, 2025 and November 7, 2025. Petitioner's Motion to Reopen Case ("Pet. Mot. to Reopen"), filed Aug. 4, 2025 (ECF No. 28); Petitioner's Memorandum of Law in Support of Amended Motion for Relief from Judgment ("Pet. Amended Mot."), filed Nov. 7, 2025 (ECF No. 39). For the following reasons, Petitioner's motions are **DENIED**.

# I. BACKGROUND

## A. Procedural History

On September 13, 2021, Petitioner filed a pro se petition, alleging that he suffered TM as a result of a flu vaccination on September 11, 2018. Petition at Preamble. That same day, Petitioner was issued the Amended General Order No. 2 setting forth the filing requirements in pro se claims. Amended General Order No. 2 dated Sept. 13, 2021 (ECF No. 5).

The case was assigned to the undersigned on September 14, 2021, and a status conference was scheduled for October 21, 2021. Notice of Reassignment dated Sept. 14, 2021 (ECF No. 7); Order dated Sept. 30, 2021 (ECF No. 11). Petitioner did not appear during the scheduled status conference; the undersigned rescheduled the conference for November 2, 2021. Order dated Oct. 26, 2021 (ECF No. 12). Petitioner again failed to appear at the rescheduled status conference on November 2, 2021. The undersigned issued an order requesting Petitioner file medical records and an affidavit in accordance with the Vaccine Rules and Guidelines. Order dated Nov. 2, 2021 (ECF No. 13).

Petitioner missed the deadline to file medical records on January 4, 2022, and on January 6, an order issued extending Petitioner's deadline by 60 days. Order dated Jan. 6, 2022 (ECF No. 14). Petitioner was warned that continued failure to follow directions from the Court would result in an order to show cause and the case could be dismissed. Id. On March 7, 2022, Petitioner again missed the deadline to file medical records. Order dated Mar. 23, 2022 (ECF No. 15). The undersigned issued an order extending Petitioner's deadline an additional 60 days, and again warned that failure to comply with the deadline may result in an order to show cause. Id.

Petitioner missed his third deadline to file medical records on May 20, 2022. Accordingly, on May 24, an Order to Show Cause was issued, noting that Petitioner had repeatedly failed to file medical records requested by the Court and warning that if Petitioner did not file medical records in compliance with the Order to Show Cause by July 22, 2022, the case would be dismissed. Order to Show Cause dated May 24, 2022, at 1-2 (ECF No. 17) ("Petitioner is ordered to show cause why this case should not be dismissed by filing evidence that Petitioner received the flu vaccine and suffered from TM or a similar illness.").

Petitioner did not file any medical records by the court-imposed deadline of July 22, 2022. Petitioner called the undersigned's chambers throughout July 2022. The undersigned's law clerk spoke with Petitioner on July 27, 2022 regarding the Order to Show Cause, the medical records needed, and how to get an attorney. That same day, Petitioner e-mailed Respondent's

counsel and the undersigned's law clerk requesting a motion for extension of time. Despite the deadline from the Order to Show Cause having passed, Respondent e-mailed he had no objection. The undersigned granted Petitioner's motion and extended Petitioner's deadline to file medical records and an affidavit by an additional 60 days, to September 26, 2022. Order dated July 27, 2022 (ECF No. 19). This order again warned that failure to file medical records by the court-imposed deadline would result in a decision dismissing the case for failure to prosecute. Id. On August 8, 2022, Petitioner called the undersigned's chambers regarding the medical records and was told his motion for extension of time was granted. On September 26, 2022, Petitioner missed his fourth deadline to file medical records and failed to comply with the Order to Show Cause.

On November 7, 2022, a Decision dismissing the case for insufficient evidence and for failure to prosecute was issued. Dismissal Decision. At that time, Petitioner had not filed vaccination records, medical records, an affidavit, or records of any kind. Id. at 3-4. Judgment entered December 9, 2022.[3] Judgment. The Dismissal Decision was publicly issued on December 27, 2022. Public Decision dated Dec. 27, 2022 (ECF No. 24).

Petitioner called the undersigned's chambers on May 31, 2023 regarding his dismissed case and left a voicemail with the undersigned's law clerk on June 6, 2023. See Informal Communications dated June 7, 2023 (docket entries). Petitioner did not file any motions or pleadings with the Court.

On August 4, 2025, Petitioner filed a letter with the Court requesting to reinstate his case and attached his vaccination and emergency room records. Pet. Mot. to Reopen. The letter was docketed as a motion to reopen. Id. Respondent filed a response on August 18, 2025, requesting that Petitioner's motion be denied. Respondent's Response to Pet. Mot. to Reopen ("Resp. First Response"), filed Aug. 18, 2025 (ECF No. 30).

Petitioner was directed to file a reply, if desired, by September 17, 2025. Order dated Aug. 19, 2025 (ECF No. 31). Petitioner filed a motion to extend this deadline to October 31, 2025 in order to retain an attorney, which was granted. See Order dated Sept. 30, 2025 (ECF No. 34). On October 27, 2025, Renée Gentry filed a consented motion to substitute as attorney of record in place of pro se Petitioner in this matter. Consented Motion to Substitute Attorney, filed Oct. 27, 2025 (ECF No. 35).

Subsequently, on November 7, 2025, Petitioner filed his amended motion for relief from judgment along with supporting documentation. Pet. Amended Mot.; ECF No. 39-1 (supporting documents). Respondent filed a response on December 22, 2025, reiterating his position that

---

[3] The Decision and Judgment were initially sent to Petitioner's address in Florida. Both documents were returned to the Court as undelivered and subsequently re-sent to Petitioner's addresses in Michigan. See ECF No. 21 (noting the Decision was returned as undeliverable to Florida address and re-mailed on November 29, 2022 to Michigan address); ECF No. 23 (noting Judgment returned as undeliverable to Florida address); ECF No. 22 (noting Judgment was initially mailed to addresses in Florida and Michigan, and re-sent to a second Michigan address on January 30, 2023).

Petitioner's motion should be denied. Respondent's Response to Pet. Amended Mot. ("Resp. Second Response"), filed Dec. 22, 2025 (ECF No. 44).

This matter is now ripe for adjudication.

### B. Petitioner's Statement of Personal Circumstances

In his amended motion for relief, Petitioner provided a statement of personal circumstances detailing his health conditions, divorce proceedings, and the actions of an attorney he retained for a separate slip-and-fall matter, Gregory Nordt. Pet. Amended Mot. at 4-7.

Petitioner explained that prior to filing his case on September 13, 2021, he had "been suffering from a string of traumatic life events: losing his first wife to cancer, losing his home building business during the care of her illness, suffering from depression, suffering from [TM] symptoms as a result of a flu vaccine[,] and facing divorce proceedings pressed against by his second wife." Pet. Amended Mot. at 4. Two days after the status conference scheduled for November 2, 2021, Petitioner's ex-wife filed a Dissolution of Marriage action against Petitioner. Id. In the following months, Petitioner had to respond to a sequence of divorce proceedings that threatened an injunction against him from his residence in Florida. Id.

On January 16, 2022, Petitioner contacted Mr. Nordt, an attorney, and signed a retainer for a slip-and-fall case that worsened his injuries and that required similar medical records. Pet. Amended Mot. at 4. Unbeknownst to Petitioner, Mr. Nordt was already facing criminal charges, including a third-degree felony for leaving the scene of a crash with personal injuries and a misdemeanor DUI. Id. Mr. Nordt later entered a plea of nolo contendere to DUI charges, and the Florida Bar filed a motion to suspend Mr. Nordt on June 15, 2022. Id.

In February 2022, Petitioner was experiencing intense neuropathic pain from TM-related symptoms that persisted since 2019, and the pain level sometimes reached a ten. Pet. Amended Mot. at 5. When he visited a new doctor in Michigan on June 21, 2022, Petitioner told the treating doctor that he had "constant, severe, heavy, sharp, burning, throbbing, numb, tingling, and stabbing" pain on his left side, from lumbar to neck. Id. Petitioner had to use a stand-up walker to ambulate. Id. On the day of his July 22, 2022 deadline, he attended a physical therapy appointment where the therapist recorded his pain level as "9/10" and noted his ongoing need for "skilled physical therapy." Id. Petitioner sought out the new doctor in Michigan after moving to the state to care for his daughter, who was diagnosed with bilateral breast cancer. Id.

In the months leading up to the September 2022 Order to Show Cause deadline, Petitioner explained he continued to visit doctors, physical therapists, and neurologists almost weekly for appointments related to his pain in his lower back, shoulder and legs. Pet. Amended Mot. at 6. From November 2022 to June 2023, Petitioner had to seek medical help almost every week from a pain management doctor, a neurosurgeon, an orthopedist, physical therapists, and a physical rehabilitation specialist. Id. Petitioner stated he called the undersigned's chambers on June 7, 2023, to inquire about the dismissal of his claim. Id.

In July 2023, Mr. Nordt, the attorney with whom Mr. Jahn signed the retainer for a slip-

and-fall claim, was suspended for three years, and Mr. Nordt's assistant at some point notified Petitioner of the suspension. Pet. Amended Mot. at 6. On September 24, 2023, Petitioner emailed the undersigned's former law clerk stating: "I am so sorry that I did[ not] send you the stuff but I was told by my [lawyer] at the time that [it] would mess up the case he was supposed to be putting together." Id.

Petitioner asserts he also reached out to Durham Law Group to seek legal help. Pet. Amended Mot. at 6. However, he faced another series of health challenges. Id. He was hospitalized between July 19 and 24, 2023 for kidney disease. Id. at 6-7. Between June 2023 and August 2023, Petitioner continued to seek medical help. Id. at 7. Between August 2023 and February 2024, Petitioner's divorce proceedings continued. Id. In 2024 and 2025, Petitioner consistently and regularly sought medical help, but his health consistently deteriorated. Id. Petitioner asserts that while "suffering from severe health conditions that initially stemmed from vaccine-related [TM] and subsequent deteriorations, [he] still tried to secure legal counsel to assist him with the Case and was eventually referred to [his] current counsel." Id.

### C. Other Evidence

In support of his motions, Petitioner filed 352 pages of supporting documents including medical records, correspondence between Petitioner and various parties (Petitioner's counsel, Respondent's counsel, the undersigned's law clerks), records related to Mr. Nordt's representation and suspension, and court documents (copies of the docket and motions from the present case and documents from Petitioner's divorce proceedings). See Mot. to Reopen at 2-23; ECF No. 39-1 at 1-331. The undersigned has summarized the most relevant documents below.

#### 1. Retainer Agreement

On January 16, 2022, Petitioner signed a retainer agreement with Mr. Nordt for representation in a "claim for damages . . . resulting from an accident that occurred on or about the 9th day of February, 2021." ECF No. 39-1 at 50-52. The retainer agreement set forth the fee arrangement with Mr. Nordt and stated the "Agreement is only for services rendered on behalf of the Client in this claim." Id. at 51.

#### 2. 2021 and 2022 Emails

Petitioner filed copies of emails he sent to and received from the undersigned's former law clerk ("MCA") dating from September 22, 2021 to August 8, 2022. ECF No. 39-1 at 29-43. These emails were sent at the undersigned's direction and supervision and are summarized below:[4]

[4] There are also additional email exchanges between Respondent's counsel and MCA, with copies to Petitioner, not included in the above list for the sake of brevity and because they are less relevant.

**a. Emails in 2021**

- September 22, 2021: Email from MCA to Petitioner and counsel for Respondent regarding setting the initial status conference. ECF No. 39-1 at 42.
- September 27, 2021: Email from MCA to Petitioner and counsel for Respondent asking Petitioner if he was available for initial status conference. ECF No. 39-1 at 40.
- September 30, 2021: Email from MCA to Petitioner and counsel for Respondent asking if the time for the initial status conference on October 21 could be changed from 1 pm to 2 pm. ECF No. 39-1 at 38.
- October 21, 2021: Reminder email from MCA to Petitioner and counsel for Respondent that the status conference was being held at 2 pm. ECF No. 39-1 at 36.
- October 26, 2021: Email from MCA to Petitioner and counsel for Respondent stating that she had "just gotten off the phone with [P]etitioner" who "stated that he had just moved and was unfortunately moving during the time of the status conference." ECF No. 39-1 at 35. MCA offered dates for November 2 or 4 to reschedule the initial status conference. Id. at 36.
- October 26, 2021: Email from MCA to Petitioner and counsel for Respondent rescheduling the initial status conference for November 2. ECF No. 39-1 at 34.
- November 1, 2021: Reminder email from MCA to Petitioner and Respondent's counsel confirming the date and time for the initial status on November 2. ECF No. 39-1 at 33.

**b. Emails in 2022**

- July 13, 2022: Email from MCA to Petitioner, with copy to Respondent's counsel, confirming receipt of voicemail messages from Petitioner. Petitioner informed that the Court would like for him to file medical records, and that if he needs additional time he may file a motion for extension of time. ECF No. 39-1 at 32. Petitioner was informed that the Court could not adjudicate his claim without evidence. Id.
- July 14, 2022: Email from MCA to Petitioner, with Respondent's counsel copied, informing him that she was unable to receive his calls that week, and noting that Petitioner had yet to file any medical records. ECF No. 39-1 at 31. The Court's pro se filing email address was provided. Id. Petitioner was also informed that if he needed additional time to file his records, he should consult with counsel for Respondent to find out whether she opposed a motion for extension of time. Id.
- July 20, 2022: Email from MCA to Petitioner, with Respondent's counsel copied, stating she had left a voicemail message and the due date for his medical records was Friday, July 22. ECF No. 39-1 at 30. If Petitioner needed more time, he was asked to file a motion to extension of time and to ask Respondent's counsel if she had any objection to the motion. Id. Petitioner was reminded that without medical records, the Court was unable to determine whether he was entitled to compensation, and that if he did not file records, his claim may be dismissed. Id.
- July 27, 2022: Email from Petitioner to Respondent's counsel asking whether Respondent objected to an extension of time to obtain medical records. ECF No. 39-1 at 30.
- August 6, 2022: Email from Petitioner to MCA, with Respondent's counsel copied, asking if Respondent's counsel approved the extension of time to get medical records.

ECF No. 39-1 at 30.

- August 8, 2022: Email from MCA to Petitioner stating that the Court granted his motion for an extension of time on July 27, 2022, and stating that Petitioner should have received the Court's order by mail. ECF No. 39-1 at 29. The order stated that Petitioner's medical records were due September 26, 2022. Id. Petitioner was informed that if he would like to receive electronic notifications of orders, he should contact the Clerk of Court at the number provided in order to complete the electronic verification form. Id. Petitioner was reminded that he had previously received the electronic verification form. Id.
- August 8, 2022: Email from Petitioner to MCA thanking her for the information and stating that "[I] will get on it right away." ECF No. 39-1 at 29.

The Decision dismissing the case based upon failure to prosecute and insufficient proof was issued on November 7, 2022. Judgment entered on December 9, 2022. The Decision was publicly issued December 27, 2022.

### 3. September 24, 2023 Emails

On September 24, 2023, emails from Petitioner were sent to MCA[5] stating he had obtained medical records and his vaccination record. ECF No. 39-1 at 27. He requested "help re-establishing [his] case." Id. at 27. Petitioner explained:

> There were several things that occurred that delayed my sending you the proof, mostly it was that because when I was first contacted by your offices about it I had a potential lawsuit against a[n] Oil Change place in Florida where I had fallen with my walker off of an 8 inch high curb and became quite injured . . . . That was all caused because I was paralyzed on my left [side] from my ribs to my toes from the flu shot. The thing is I retained an attorney firm with Gregory Nordt as my attorney and when [the Court] contacted me I did[ not] think I should have [two] cases going at the same time that were both related to injuries suffered and the primary cause being that I have been paralyzed. After 1 year and 8 months awaiting a trial date and news from Mr. Nordts office I was made aware by one of his assistant lawyers that Mr. Nordt had in fact lost his license to practice law because of [three] drunk driving arrests . . . . Please re-instate my case . . . . I am so sorry that I did[ not] send you the stuff but I was told by my Lawyer at the time that [i]t would mess up the case he was suppose to be putting together! He never filed a case and now [it is] to[o] late but maybe you can still help me.

Id. at 27-28. It does not appear that Respondent's counsel was copied on the emails from September 2023. See id. at 27.

[5] MCA held a term law clerk position in the undersigned's chambers from January 6, 2020 until August 19, 2022.

## II. PARTIES' ARGUMENTS

### A. Petitioner's Contentions

In his initial motion to reopen his case, Petitioner asserts that he requested his medical records and proof of vaccination from Walgreens and Advent Hospital related to his TM but "[t]hey obviously never sent them to [the Court]." Pet. Mot. to Reopen at 1. He further explains that during the time he was attempting to obtain medical and vaccination records, he was suffering from major depression, facing divorce proceedings, and was "in and out of the hospital with urinary tract infections and sepsis." Id. Petitioner asserts he "tried desperately to fulfill [the Court's] requests" and requested his case be reinstated. Id.

In his amended motion, Petitioner asserts he has demonstrated extraordinary circumstances warranting relief under Rule 60(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Pet. Amended Mot. at 9. Petitioner advances several arguments in support of RCFC 60(b)(6) relief.

First, Petitioner contends he engaged Mr. Nordt as counsel for his slip-and fall incident on January 16, 2022, and, because that matter required medical records, there was a verbal agreement that Mr. Nordt would also assist him in obtaining records for his pending vaccine claim. Pet. Amended Mot. at 11. Unbeknownst to Petitioner, Mr. Nordt was facing suspension of his law license and "deceived [Petitioner] by telling him to let the counsel handle the medical records until the case was dismissed." Id. Petitioner argues he "reasonably relied on his counsel, who had given him no reason to believe he was not fulfilling the terms of their agreement." Id. at 12. Thus, Petitioner argues that Mr. Nordt's conduct was grossly negligent and "amounted to the virtual abandonment of" Petitioner's vaccine claim. Id. at 11-12. Relying on a number of attorney abandonment cases, Petitioner concludes that Mr. Nordt's conduct was "so grossly negligent as to constitute an extraordinary circumstance" that supports RCFC 60(b)(6) relief. Id. at 12; see DiMasi v. Sec'y of Health & Hum. Servs., No. 2022-1854, 2023 WL 4697122 (Fed. Cir. July 24, 2023); Coleman v. Sec'y of Health & Hum. Servs., No. 06-710V, 2011 WL 6828475 (Fed. Cl. Spec. Mstr. Dec. 7, 2011); Freeman v. Sec'y of Health & Hum. Servs., 35 Fed. Cl. 280 (1996); Primbs v. United States, 4 Cl. Ct. 366 (1984).

Moreover, Petitioner faced concurrent deteriorating health and other personal hardships that hindered his ability to comply with the Court's directives and seek relief sooner. Pet. Amended Mot. at 12. Petitioner compared these personal hardships to the extraordinary circumstances recognized by the Supreme Court in Klapprott. Id. at 13-14 (citing Klapprott v. United States, 335 U.S. 601, 614 (1949)). Moreover, Petitioner argues that his "significant life changes and serious medical complications" prevented him from seeking relief. Id. at 14. Petitioner maintains he had "no meaningful opportunity to pursue prompt relief" as "his efforts were necessarily focused on managing the extensive medical treatment required by his condition." Id.

Thus, Petitioner argues he has satisfied his burden for RCFC 60(b)(6) relief as he (1) demonstrated, in light of Mr. Nordt's gross negligence, his resulting hardship, and concurrent personal challenges, the extraordinary circumstances that prevented him from filing sooner and

(2) filed his motion for relief within a reasonable time. Pet. Amended Mot. at 9. Accordingly, Petitioner requests that judgment should be vacated to protect Petitioner's right to a fair determination based on a complete record untainted by Mr. Nordt's deception. Id.

### B. Respondent's Contentions

Respondent disagrees that Petitioner has demonstrated the kind of "extraordinary circumstances" that justify relief from judgment under RCFC 60(b)(6). Resp. Second Response at 2. Further, Respondent argues that Petitioner failed to seek relief within a reasonable time. Id. at 8.

Respondent argues that Petitioner was proceeding pro se in his vaccine claim and was responsible for the prosecution of his case. Resp. Second Response at 2. Respondent notes that Mr. Nordt was retained as Petitioner's counsel for his slip-and-fall claim and that any reliance on Mr. Nordt for the vaccine claim was not reasonable. Id. at 3-5. Thus, Petitioner's reliance on an attorney abandonment theory fails to establish extraordinary circumstances necessary for RCFC 60(b)(6). Id.

Respondent next contends that Petitioner's personal hardships do not excuse Petitioner's failure to comply with the Court's directives or represent extraordinary circumstances. Resp. Second Response at 5-6; Resp. First Response at 9. Regarding Petitioner's reliance on Klapprott, Respondent disagrees that this case advances Petitioner's arguments and disputes that Petitioner had "no reasonable opportunity" to advance his claim. Resp. Second Response at 5-6. Moreover, Respondent questions whether Petitioner is reliable. Id. at 7.

Finally, even if Petitioner did demonstrate extraordinary circumstances, Respondent asserts that Petitioner did not seek relief within a reasonable time. Resp. Second Response at 8. Respondent contends that Petitioner's more than two-and-a-half year delay in seeking RCFC 60(b)(6) relief is "inexcusable." Id. Respondent notes that Petitioner was aware of the judgment rendered against him, yet he failed to take prompt action in seeking relief from that judgment. Id. at 8-9. Thus, Petitioner's motions should be denied. Id. at 9.

## III. APPLICABLE LEGAL STANDARDS

### A. Pro Se Filing Standards

Vaccine Rule 17 sets forth the filing and service requirements for all documents following the petition. See RCFC, Appendix B, Vaccine Rule 17 (as amended through July 31, 2023) [hereinafter "Vaccine Rule"]. "All pleadings and other papers required under the Vaccine Rules or by order of the special master or the court must be brought to the attention of the special master or the court through formal filings with the clerk rather than through correspondence." Vaccine Rule 17(b)(1). A pro se petitioner may file documents in paper form or via e-mail to ProSe_case_filings@cfc.uscourts.gov. Vaccine Rule 17(b)(3)(B); RCFC, Supplement to Appendix B, Rule 9(b)(i).

Pro se filings are generally held to "less stringent standards" than those of trained

attorneys. See, e.g., Steffen v. United States, 995 F.3d 1377, 1380 (Fed. Cir. 2021) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)); Demes v. United States, 52 Fed. Cl. 365, 368 (2002). However, pro se litigants "are not immune from laws and rules of procedure simply on the basis of their pro se status." Demes, 52 Fed. Cl. at 368. While pro se petitioners may not be fully acquainted with court rules, "the Supreme Court has instructed courts to enforce procedural rules even against pro se litigants who may not be familiar with them." Ling v. Sec'y of Health & Hum. Servs., No. 2023-1072, 2023 WL 8447276, at *3 (Fed. Cir. Dec. 6, 2023) (citing McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.")); see also LoSacco v. City of Middletown, 71 F.3d 88, 92 (2d Cir. 1995) ("Although pro se litigants should be afforded latitude, they generally are required to inform themselves regarding procedural rules and to comply with them, . . . especially . . . in civil litigation." (internal citations and quotations omitted)).

### B. Relief from Judgment Pursuant to RCFC 60

Vaccine Rule 36(a) allows a party to seek relief from judgment pursuant to RCFC 60. RCFC 60 is identical to Rule 60 of the Federal Rules of Civil Procedure ("FRCP"). Thus, cases involving Rules 60 of the FRCP are informative in determining the meaning and intent of RCFC 60. In determining whether a judgment should be set aside or altered, "the need for finality of judgments" must be balanced against "the importance of ensuring that litigants have a full and fair opportunity to litigate." Kennedy v. Sec'y of Health & Hum. Servs., 99 Fed. Cl. 535, 539 (2011) (citing United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 276 (2010)); see also Bridgham ex rel. Libby v. Sec'y of Health & Hum. Servs., 33 Fed. Cl. 101, 104 (1995) (discussing the "tension between the goals of ensuring that the court's judgment appropriately reflects the adjudication of the parties' rights and of providing the parties with certainty as to those rights").

"The court has discretion regarding whether to grant relief under [RCFC] 60(b), 'and the court may weigh equitable considerations in the exercise of its discretion.'" Curtis v. United States, 61 Fed. Cl. 511, 512 (2004) (quoting Dynacs Eng'g Co. v. United States, 48 Fed. Cl. 240, 241-42 (2000)). RCFC 60(b) as a remedial provision is to be "liberally construed for the purpose of doing substantial justice." Patton v. Sec'y of Health & Hum. Servs., 25 F.3d 1021, 1030 (Fed. Cir. 1994).

Under RCFC 60(b), the court may grant relief from a final judgment on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under RCFC 59(b);
> (3) fraud . . . , misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

RCFC 60(b).

Motions for relief under RCFC 60(b) "seek . . . to set aside a final decision and it is incumbent upon the motion-filer to demonstrate that he . . . is entitled to relief." Kennedy, 99 Fed. Cl. at 550. The motion's statements are "not like a pleading . . . in which the factual allegation[s] are presumed true." Id.

As a threshold matter, RCFC 60(c)(1) requires that "[a] motion under RCFC 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3), no more than a year after the entry of the judgment or order or the date of the proceeding." RCFC 60(c)(1).

The catch-all provision of RCFC 60(b)(6) provides for relief from judgment upon "any other reason that justifies relief." RCFC 60(b)(6). "The court is limited in granting relief under RCFC 60(b)(6) in two respects: (1) the grounds asserted for relief must not be the same as those listed in [RCFC] 60(b)(1)–(5), and (2) there must be a valid reason that justifies affording the relief, usually broadly described as extraordinary circumstances." Q Integrated Cos., LLC v. United States, 131 Fed. Cl. 125, 132 (2017); see also Kenzora v. Sec'y of Health & Hum. Servs., No. 10-669V, 2015 WL 6121582, at *2 (Fed. Cl. Spec. Mstr. Sept. 25, 2015) (citing Freeman, 35 Fed. Cl. at 283; Kennedy, 99 Fed. Cl. at 547; Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988)). Clauses (1)-(4) are mutually exclusive with clauses (5) and (6), and thus, relief under clause (6) cannot be asserted on one of those grounds. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993); Kenzora, 2015 WL 6121582, at *2.

In addition, in order to justify relief, a showing of "extraordinary circumstances" is required. Kennedy, 99 Fed. Cl. at 548 (citing Ackermann v. United States, 340 U.S. 193, 202 (1950)). RCFC 60(b)(6) permits the decision maker to grant relief from judgment to a party only in circumstances in which a "grave miscarriage of justice" would otherwise result. Id. at 540 (quoting United States v. Beggerly, 524 U.S. 38, 47 (1998)). This narrow use of RCFC 60(b)(6) is essential in order to preserve the finality of judgments. Id. at 548 (citing Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)). The party seeking relief from judgment "must show that the extraordinary circumstances prevented [the] party from taking timely action to prevent or correct an erroneous judgment." Q Integrated, 131 Fed. Cl. at 132 (internal citations omitted).

## IV. ANALYSIS

Petitioner requests relief from the judgment pursuant to RCFC 60(b)(6). However, the facts presented do not meet the criteria required for relief under RCFC 60(b) and therefore do not warrant relief from the judgment.

### A. Petitioner Has Not Demonstrated Extraordinary Circumstances Required for Relief Under RCFC 60(b)(6)

While the contents of pro se filings may be held to less stringent standards, pro se litigants "are not immune from laws and rules of procedure simply on the basis of their pro se status."

Demes, 52 Fed. Cl. at 368. The Vaccines Rules state that "[a]ll pleadings and other papers . . . must be brought to the attention of the special master . . . through formal filings with the clerk rather than through correspondence." Vaccine Rule 17(b)(1). Additionally, the Vaccine Rules outline the requirements for pro se petitioners filing via email.[6] Petitioner was previously provided the pro se filing email address for the Clerk of Court's office and he had been directed to make filings either through the pro se filing email address or through hard copies to the Clerk of Court's office. See Order dated July 27, 2022 at 2; ECF No. 39-1 at 31; see also Amended General Order No. 2 (ECF No. 5) (directing pro se petitioners to use pro se filing email).

The circumstances described by Petitioner do not demonstrate the extraordinary circumstances necessary to set aside the judgment under RCFC 60(b)(6). RCFC 60(b) is an "exception to finality," and clause (6) must be construed narrowly in order to preserve the finality of judgments. Kennedy, 99 Fed. Cl. at 548 (citing Gonzalez, 545 U.S. at 529, 535). Thus, relief from judgment under RCFC 60(b)(6) must be justified by a showing of "exceptional circumstances," where a "grave miscarriage of justice" would result, and the "substantial rights" of the party would be harmed if relief is not granted. Kennedy, 99 Fed. Cl. 535 at 540, 548; Dynacs Eng'g Co., 48 Fed. Cl. at 242.

The substantial rights of a petitioner may be harmed where petitioner has been deprived of a full and fair opportunity to be heard on the merits. Relief has been granted under RCFC 60(b)(6) where, "through no fault of their own," petitioners lost the opportunity to have their case decided on the merits due to having been misled by their attorney. Freeman, 35 Fed. Cl. at 284; see also Coleman, 2011 WL 6828475, at *4. However, RCFC 60(b)(6) does not relieve a party from a "free, calculated, and deliberate choice." Kennedy, 99 Fed. Cl. at 548 (quoting Ackermann, 340 U.S. at 198). Accordingly, relief is generally not available under clause (6) for ineffective assistance of counsel or for an adverse judgment resulting from a litigant's decision to proceed pro se. Id.

Petitioner's case was dismissed for insufficient evidence and for failure to prosecute after Petitioner failed to file vaccination records, medical records, an affidavit, or records of any kind to support his claim. At the time of the dismissal, Petitioner was proceeding pro se. The undersigned had afforded Petitioner multiple opportunities to file supporting documentation and explained to him that his case would be dismissed if he failed to file supporting documentation. In total, Petitioner was informed in four Orders over a period of seven months that if he did not file vaccination records and medical records, his claim would be dismissed. See Order dated Jan. 6, 2022 at 1 ("Failure to file medical records and an affidavit in sixty (60) days may result in an Order to Show Cause and the case will be dismissed."); Order dated Mar. 23, 2022 at 1 (same); Order to Show Cause at 1 ("Petitioner is ordered to show cause why this case should not be dismissed by filing evidence that Petitioner received the flu vaccine and suffered from TM or a similar illness."); Order dated July 27, 2022 at 1 ("Failure to file medical records by [September 26, 2022] will result in a decision dismissing the case for failure to prosecute.").

Petitioner asserts that the actions of his prior counsel (retained for a separate slip-and-fall

[6] Of note, the Amended General Order No. 2 (sent to Petitioner the day he filed his petition) sets forth the same e-mail filing requirements for a pro se petitioner as the Vaccine Rules.

matter), Mr. Nordt, deprived him "of a fair determination based on a complete record untainted by his prior counsel's deception." Pet. Amended Mot. at 9. Petitioner contends he reasonably relied on Mr. Nordt to obtain medical records needed to support his vaccine claim; however, unbeknownst to Petitioner, Mr. Nordt was facing suspension of his Florida law license due to pending criminal charges. Petitioner characterized Mr. Nordt's actions as gross neglect amounting to "virtual abandonment" of Petitioner. Id. at 11.

The facts and circumstances in the attorney abandonment cases relied on by Petitioner are distinct from the present case. First, unlike the cases that Petitioner relies on, Petitioner does not assert that he retained Mr. Nordt for his vaccine claim. Instead, he explains that he had a verbal agreement that Mr. Nordt would obtain medical records. The retainer agreement signed by Petitioner and Mr. Nordt demonstrates that Mr. Nordt was retained for his slip-and-fall claim and not his vaccine claim. See ECF No. 39-1 at 50-52.

As Respondent notes, the attorney abandonment cases provided by Petitioner largely "pertain to acts of misconduct committed by attorneys in ongoing litigation where they had been retained to represent one of the parties." Resp. Second Response at 3-4; see, e.g., DiMasi, 2023 WL 4697122, at *10 (noting attorney abandoned significant aggravation claim in Vaccine Act case without client consultation or consent); Coleman, 2011 WL 6828475, at *1 (finding the petitioner's attorney repeatedly failed to comply with deadlines and respond to orders); Primbs, 4 Cl. Ct. at 367, 367 n.1 (explaining attorney retained by plaintiff to prosecute unlawful termination claim failed to notify plaintiff of court's show cause and dismissal orders and did not file affidavit prepared by plaintiff).

One case provided by Petitioner did involve pro se petitioners who had been "actively misled" by an attorney and granted RCFC 60(b)(6) relief. In Freeman, the pro se petitioners alleged they provided an attorney a $200 fee, a signed retainer agreement, and it was "their understanding that they had reached a verbal agreement and, from that point forward, the attorney would file the necessary papers with the court, and handle the prosecution of the case." Freeman, 35 Fed. Cl. at 282. The petitioners alleged that they had followed up with the attorney on two separate occasions and he "told them that the process was slow and that they should let him handle the case." Id. Additionally, the attorney provided a letter that corroborated, in part, the petitioners' allegations. Id. While their petition was dismissed due to failure to prosecute after no additional filings were made, the court noted that the attorney's actions may have "lulled petitioners into relying on him to prosecute the case" and under the facts alleged it would be reasonable for the pro se petitioners "to assume that the clerk's office was corresponding with their attorney, and so the lack of word from the court would not be surprising." Id. at 283. The court concluded that "through no fault of their own" the petitioners lost an opportunity to have their case heard on the merits. Id.

Here, however, Petitioner was never represented by Mr. Nordt in his vaccine claim. Nor does Petitioner allege he retained Mr. Nordt for his vaccine claim. Instead, he only alleges that they had a verbal understanding Mr. Nordt would obtain medical records as similar medical records were needed for the slip-and-fall claim. Regardless of any verbal agreement with Mr. Nordt to obtain records, Petitioner retained the responsibility for filing records necessary to support his claim and the responsibility for prosecuting his claim.

A pro se petitioner retains the sole responsibility for prosecuting his claim. Geschwindner v. Sec'y of Health & Hum. Servs., No. 17-1558V, 2022 WL 22942770, at *11 (Fed. Cl. Spec. Mstr. Oct. 11, 2022); see also Bass v Sec'y of Health & Hum. Servs., No. 05-901V, 2006 WL 5631321, at *2 (Fed. Cl. Spec. Mstr. June 15, 2006) (emphasizing that "being a pro se litigant does not relieve the petitioner of his burden to fulfill the statutory requirements of the Vaccine Act"). Courts have consistently declined to afford RCFC 60(b)(6) relief to pro se litigants because they suffered "adverse consequences from a decision to proceed pro se." Kennedy, 99 Fed. Cl. at 548, 548 n.23 (2011) (listing cases). Moreover, even when petitioners are abandoned by counsel, the petitioner "must also show that they diligently pursued their rights before relief can be granted under [RCFC] 60(b)(6)." M.D. v. Sec'y of Health & Hum. Servs., No. 10-611V, 2020 WL 8025384, at *11 (Fed. Cl. Spec. Mstr. Dec. 17, 2020) (citing Gonzalez, 545 U.S. at 537-38 (2005); Foley v. Biter, 793 F.3d 998, 1004 (9th Cir. 2015)).

Petitioner asserts he reasonably relied on Mr. Nordt, who "had given him no reason to believe he was not fulfilling the terms of their agreement." Pet. Amended Mot. at 12. However, this assertion is less credible. Petitioner retained Mr. Nordt for the slip-and-fall claim on January 16, 2022. Between January 2022 and the Order to Show Cause deadline in September 2022, the undersigned continued to issue Orders directing Petitioner to file records in support of his claim and explained to Petitioner that the failure to file supporting documentation would result in the dismissal of his claim. Thus, unlike the petitioners in Freeman, Petitioner cannot assert that he was unaware that requested records were not being filed nor can he credibly assert that he was unaware that his case was not prosecuted.

Further, Petitioner's own filings also provided inconsistent explanations as to why he did not file the requested records. For example, in the initial motion to reopen, Petitioner stated that he had requested records from Walgreens and Advent Hospital and the providers failed to send the records. Mot. to Reopen at 1 (stating Petitioner requested records but "[Walgreens and Advent Hospital] obviously never sent them to [the Court]"). In the September 2023 email, Petitioner stated that he was "told by [his] [lawyer]" that filing his medical records with this Court "would mess up" the slip-and-fall action. ECF No. 39-1 at 27-28. In that same email, Petitioner suggests he chose to not file medical records. Id. (explaining he did not file records, in part, because "when [the Court] contacted me I did[ not] think I should have [two] cases going at the same time that were both related to injuries").

While the undersigned takes seriously the misconduct of Mr. Nordt, given the facts before her, she cannot find that Petitioner was denied an opportunity to have his case heard through no fault of his own. Petitioner was given ample opportunities to obtain and file his medical records during the pendency of his claim. In sum, Petitioner had not demonstrated that his substantial rights would be violated absent relief.

Next Petitioner argues that his concurrent "significant life changes and serious medical complications" prevented him from seeking relief and contends that the presence of multiple, concurrent personal hardships may provide sufficient grounds for relief under RCFC 60(b)(6). Pet. Amended Mot. at 11-12 (citing Klapprott, 335 U.S. at 614). Petitioner analogizes his personal hardships and circumstances to the litigant in Klapprott. However, the facts are very

different. In Klapprott, the Supreme Court determined that a litigant had "no reasonable opportunity" to defend himself in denaturalization proceedings in New Jersey while incarcerated in New York. Klapprott, 335 U.S. at 615. In addition to his incarceration, the litigant suffered failing health, was unable to retain an attorney for the denaturalization proceedings, and was preoccupied in defending himself against "the gravest of criminal charges." Id. at 614. The Court explained that the litigant had "not neglected to act in his own defense" but rather "in jail [in New York]," he was "no more able to defend himself in the New Jersey court than he would have been had he never received notice of the charges." Id. Petitioner's undenied allegations constituted an "extraordinary situation" beyond "mere neglect," and the Court set aside the default judgment entered against the litigant in the New Jersey denaturalization action four years prior based on FRCP 60(b). Id. at 613-15.

The circumstances described by Petitioner (deteriorating health, divorce proceedings, interstate move, and sick child, as well as the actions of Mr. Nordt) are not like Klapprott—a case in which an incarcerated litigant was defending against denaturalization (an "extraordinarily severe penalty" comparable to criminal proceedings). See Klapprott, 335 U.S. at 611-12. Nor did the circumstances described by Petitioner leave him with no reasonable opportunity to pursue his case.

Moreover, the personal hardships described by Petitioner have not typically constituted extraordinary circumstances allowing for RCFC 60(b)(6) relief. See, e.g., Sec. & Exch. Comm'n v. Cohen, 671 F. Supp. 3d 319, 326 (E.D.N.Y. 2023) (finding the defendant's "medical issues" did not constitute "an extraordinary situation warranting 60(b) relief" (internal quotations omitted)); Broadway v. City of New York, No. 96 CIV. 2798, 2003 WL 21209635, at *4 (S.D.N.Y. May 21, 2003) (explaining that the "[plaintiff's] cycle of ill health and incarceration has continued . . . [and] does not reveal an 'extraordinary' situation"); see also Hampton v. Sec'y of Health & Hum. Servs., No. 19-1857V, 2024 WL 2737664, at *9 (Fed. Cl. Spec. Mstr. May 22, 2024), appeal dismissed, No. 2025-1042, 2025 WL 1135976 (Fed. Cir. Apr. 17, 2025) (finding homelessness did not constitute an "extraordinary circumstance" and explaining that "sympathy alone cannot dictate the outcome of petitioner's motion").

Finally, while the undersigned is sympathetic to the hardships posed by Petitioner's deteriorating health, divorce proceedings, interstate move, and sick child, the undersigned cannot find these types of personal hardships justify disturbing the finality of judgment. Kennedy, 99 Fed. Cl. 535 at 549 (rejecting circumstances that "would severely threaten the finality of judgments, particularly under the Vaccine Act" and subject "a very large number of prior Vaccine Act cases" to reopening).

For the above reasons, Petitioner has failed to demonstrate the "exceptional circumstances" necessary to vacate judgment and reopen this case.

### B. Petitioner's Claim Under RCFC 60(b)(6) Is Also Untimely As It Was Not Filed Within a Reasonable Period of Time After Judgment

Even in the absence of any specific time limit, motions pursuant to RCFC 60(b) must be made "within a reasonable time." The determination of reasonableness is made "on a fact

specific basis." Freeman, 35 Fed Cl. at 283 (citing Laney v. United States, 26 Cl. Ct. 318, 320 (1992)). Relevant factors include "the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief." Id. (quoting Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990)). Here, Petitioner waited over two and a half years to file a motion seeking relief from judgment. The facts and circumstances of this case establish that Petitioner's delay in seeking relief was not reasonable. Thus, even if above-discussed circumstances were viewed as extraordinary, Petitioner did not bring his motions within a reasonable time as required for relief under RCFC 60(b)(6).

Petitioner's filings indicate he was aware of the judgment against him in June 2023 (five months after judgment) and aware of Mr. Nordt's suspension by September 2023 (nine months after judgment). See, e.g., Pet. Amended Mot. at 6 (stating Petitioner called the Court in June 2023 to "inquire about the dismissal"); ECF No. 39-1 at 27-28 (asking for help to "re-establish [his] case which had been dismissed" and discussing the suspension of Mr. Nordt). However, Petitioner did not file his motion to reopen this case until August 2025 (two years and eight months after judgment).

Petitioner contends that Klapprott and Freeman, in which the litigants were granted Rule 60(b) relief four and three years after final judgment, have comparable circumstances to the present case. Pet. Amended Mot. at 13-14. The undersigned disagrees.

In Klapprott, a litigant sought relief from a default judgment resulting in his denaturalization four years prior. The Supreme Court determined the litigant's circumstances (he was incarcerated, unable to hire or afford a lawyer to represent him in the denaturalization proceeding, and occupied with defending himself in the criminal case) left him with "no reasonable opportunity" to defend himself in the denaturalization action. Kloppart, 335 U.S. at 614-15. Petitioner suggests that his "significant life changes and serious medical complications" likewise prevented him from prevented him from filing for relief sooner. Pet. Amended Mot. at 14. As discussed above, the undersigned finds this comparison unconvincing.

While more analogous to the present case than Klapprott, the circumstances in Freeman also do not provide support for Petitioner's claim that he sought relief within a reasonable period of time after judgment. While the petitioners in Freeman filed their motion for relief three years and five months after dismissal, the petitioners alleged they were unaware of the April 1992 case dismissal until September 1995 (approximately three years and five months after-the-fact). Freeman, 35 Fed Cl. at 283. While the court had issued a letter informing petitioners of the dismissal, that letter was returned to the court by the postal service and the Clerk of Court was subsequently unable to make contact with the petitioners. Id. at 282, 282 n.2. After learning of the dismissal, the petitioners took "prompt action" and filed a motion for relief in September 1995. Id. at 284. Given the petitioners' prompt action upon learning of the dismissal (as well as the petitioners' prior diligence and the court's belief that their attorney's actions might have lulled petitioners into relying on him to prosecute the case), the Court determined the petitioners had brought their motion seeking relief from judgment within a reasonable time. Id.

Unlike the petitioners in Freeman, Petitioner failed to take prompt action upon learning about the dismissal of his claim (or suspension of Mr. Nordt). Here, Petitioner was aware of the

dismissal of his claim within five months of judgment (and aware of Mr. Nordt's suspension within nine months of judgment). However, despite being aware of both judgment against him and Mr. Nordt's suspension from the practice of law, Petitioner waited another two years to file his motions seeking relief from judgment.

In Petitioner's amended motion, his counsel represents that since obtaining counsel, Petitioner has "demonstrated diligence by . . . promptly providing all records in support of his claim." Pet. Amended Mot. at 15. This statement does not appear to be accurate. The medical records provided by Petitioner show that he received the flu vaccine at issue on September 11, 2018. There are no other medical records filed from 2018. Pet. Mot. to Reopen at 6-20. The records from 2019 show Petitioner was admitted to the hospital for chest pain and a stent was placed on July 16, 2019. Subsequently, Petitioner had a fall, and complained of pain, with left lower extremity weakness and numbness. Id. at 19. On July 19, 2019, MRI studies revealed "bright signals in the spinal cord from T2 down [] suggestive of [TM]." Id. at 6. Other than consultation records and his hospital discharge records in July, no other records for 2019 were filed. Additional records for medical visits in 2022, 2023, 2024, and 2025 were filed. See ECF 39-1 at 73-212, 216-72, 280-331.

The records filed do not include medical records from the date of vaccination on September 11, 2018 until Petitioner's hospitalization for chest pain on July 16, 2019. There is a nine-month gap between the date of the relevant flu vaccination and the date that Petitioner was diagnosed with TM. This suggests that Petitioner has not filed complete medical records in support of his alleged vaccine related injury or provided such records to his attorney as alleged.[7]

In determining the reasonableness of delay, the undersigned must consider the length and circumstances of the delay. Petitioner asserts that his personal circumstances left him with "no meaningful opportunity to pursue prompt relief in the interim, as his efforts were necessarily focused on managing the extensive medical treatment required by his condition." Pet. Amended Mot. at 14. The undersigned questions this explanation and does not find it reasonable, especially given that Petitioner was aware of the judgment against him and the suspension of Mr. Nordt in that time period. See, e.g., Hampton, 2024 WL 2737664, at *11 (finding a 20-month delay in seeking relief "inordinate" when the Petitioner was not "specifically aware" of the

[7] While the undersigned does not reach the underlying merits of Petitioner's vaccine claim, she has reviewed all medical records filed by Petitioner. Petitioner received the flu vaccine at issue on September 11, 2018, and he was diagnosed with TM on July 19, 2019, nine months after vaccine. The undersigned is not aware of any demyelinating injury claim in the Vaccine program, including a TM claim, where a petitioner prevailed on nine-month onset. See, e.g., Ray v. Sec'y of Health & Hum. Servs., No. 20-321V, 2025 WL 3900631, *25-26 (Fed. Cl. Spec. Mstr. Dec. 12, 2025) (rejecting a 74-day onset for a demyelinating injury and noting temporal association is generally not accepted after eight weeks/two months); Kindle v. Sec'y of Health & Hum. Servs., 177 Fed. Cl. 689, 712-13 (2025) (crediting the Chief Special Master's conclusion that a nine-week symptom onset was too remote to infer vaccine causation of Guillain-Barré syndrome based, in part, on his "accumulated experience" adjudicating such claims); Redzepagic v. Sec'y of Health & Hum. Servs., No. 19-853V, 2025 WL 1147520, at *16 (Fed. Cl. Spec. Mstr. Mar. 19, 2025) ("Decisions in the Vaccine Program have gone out as far as two months or 60 days for vaccine-caused demyelinating illness.").

judgment against him but was on notice that a dismissal was imminent).

The undersigned acknowledges that after judgment issued on December 9, 2022, Petitioner called her chambers on May 31, 2023 and June 7, 2023, and that he alleges that he emailed her chambers on September 24, 2023. See Informal Communications dated June 7, 2023; Pet. Amended Mot. at 6; ECF No. 39-1 at 27-29. While these events establish that Petitioner was aware that his case was closed, they do not show he was diligent or prompt in seeking relief, particularly since he did not file his motion to reopen the case until August 4, 2025, two years later. See, e.g., Hampton, 2024 WL 2737664, at *3, *3 n.2 (noting that a call to the Office of the Clerk of Court following dismissal and judgment was "not strong evidence of diligence on petitioner's part"). Petitioner does not allege he filed any motions or other pleadings until he filed his motion to reopen in August 2025.

The undersigned does not doubt that Petitioner's medical condition and other hardships required a significant amount of time, energy, and focus. She cannot, however, conclude that Petitioner was left with no meaningful opportunity to seek relief, and finds that the circumstances put forward by Petitioner do not support a finding that his motion was made within a reasonable time.

Therefore, even if Petitioner had demonstrated extraordinary circumstances, the undersigned would still deny his motion for relief from judgment based upon the delay in seeking relief from judgment.

## V. CONCLUSION

The undersigned extends her sympathy to Petitioner for the personal hardships, pain and suffering, and disability that he has experienced. The undersigned's findings, however, cannot be decided based upon sympathy, but rather on the evidence and law.

For the reasons discussed above, Petitioner has failed to demonstrate circumstances that justify relief under RCFC 60(b). Therefore, Petitioner's motions seeking for Relief from Judgment and associated relief pursuant to RCFC 60(b) are **DENIED**.

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Special Master